1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
         - - - - - - - - - - - - - - - - - X
         UNITED STATES OF AMERICA,         :    07 Cr 625

                        v.                 :    U.S. Courthouse
                                                Brooklyn, New York
         MICHAEL McCORMACK,                :
                                                August 28, 2007
                        Defendant.         :    3:30 p.m.

         - - - - - - - - - - - - - - - - - X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ NOV 20 2007 ★
BROOKLYN OFFICE

TRANSCRIPT OF PLEA
BEFORE THE HONORABLE JOHN GLEESON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:     ROSLYNN R. MAUSKOPF
                        United States Attorney
                        By:  SEAN HARAN
                        Assistant U.S. Attorney
                        One Pierrepont Plaza
                        Brooklyn, New York 11201

For the Defendant:      MATTHEW J. SANTAMAURO, ESQ.

Court Reporter:         Burton H. Sulzer
                        225 Cadman Plaza East
                        Brooklyn, New York 11201
                        (718) 260-4526
                        Fax # (718) 260-4450

Proceedings recorded by mechanical stenography, transcript produced by CAT.

Burton H. Sulzer - OCR, CM, CRR

2

1         (Open court-case called.)

2         THE COURT:  Good afternoon.

3         You're Mr. McCormack.

4         THE DEFENDANT:  Yes, sir.

5         MR. HARAN:  Your Honor, myself and the agent were

6 just sitting at defense counsel's table and speaking with

7 Mr. Santamauro and Mr. McCormack because Mr. Santamauro

8 indicated to me a few minutes ago that Mr. McCormack might be

9 having second thoughts about pleading guilty.

10         I requested permission from Mr. Santamauro just to

11 speak to Mr. McCormack for a few minutes and we were just

12 starting, and I am relatively confident that we can get over

13 this hurdle and I would ask that if we could have maybe five

14 minutes.  Maybe we can still go forward with the plea.

15         THE COURT:  All right.  That's fine.  Ordinarily you

16 could have a lot longer than that, but it turns out I have to

17 leave the building at about 4:15.  That leaves time, but not

18 much more time.

19         MR. HARAN:  Thank you.

20         (Recess.)

21         THE COURT:  Are you all set?

22         MR. HARAN:  Thank you, your Honor.

23         THE COURT:  Have you had enough time to go over all

24 this with your lawyer?

25         THE DEFENDANT: Yes.

```
                                                                  3
1            THE COURT:  I don't want you to be rushed or feel
2   rushed.
3            THE DEFENDANT: No.
4            THE COURT:  If you want more time I'll be happy to
5   give it to you.
6            THE DEFENDANT: No.
7            THE COURT:  Are you sure?
8            THE DEFENDANT: Yes, sir.
9            THE COURT:  Raise your right hand.
10           (Defendant sworn.)
11           THE COURT:  State your name for the record.
12           THE DEFENDANT: Michael Brian McCormack..
13           THE COURT:  How old are you?
14           THE DEFENDANT: Thirty-two.
15           THE COURT:  How far did you go in school?
16           THE DEFENDANT: Eighth grade.
17           THE COURT:  Have you been able to communicate
18  effectively with your lawyer?
19           THE DEFENDANT: Yes.
20           THE COURT:  Are you satisfied so far with the
21  representation he's given you?
22           THE DEFENDANT: Yes.
23           THE COURT:  Is your mind clear right now?
24           THE DEFENDANT: Yes.
25           THE COURT:  You understand why you're here and what
```

1  these proceedings are all about?
2          THE DEFENDANT: Yes.
3          THE COURT:  Have you had any alcohol or medication
4  or drugs in the last 24 hours?
5          THE DEFENDANT: No.
6          THE COURT:  Have you ever been treated by a
7  psychiatrist?
8          THE DEFENDANT: No.  Actually, I did, when I was
9  young.
10         THE COURT:  A long time ago?
11         THE DEFENDANT: Yes.
12         THE COURT:  Any reason to doubt your client's
13 competence to waive indictment or plead guilty?
14         MR. SANTAMAURO:  No reason, your Honor, no.
15         THE COURT:  This charge in this information is a
16 felony, which means unless you waive your right to require the
17 government to proceed in the following way, which I understand
18 you want to do, we're going to end these proceedings because
19 then they are going to have to get an indictment.
20         Do you know what I'm talking about, about your right
21 to grand jury indictment?
22         THE DEFENDANT:  Yes.
23         THE COURT:  A grand jury has anywhere from 16 to 23
24 people drawn at random from the community.  In the absence of
25 a waiver on your part of this right that you have under the

5

1  Constitution and the Fifth Amendment and our rules, the
2  government would have to go before that body of people and
3  present information sufficient to persuade at least 12 of the
4  grand jurors that there is probable cause to believe you
5  committed this crime in the information.  Understood?
6          THE DEFENDANT: Yes, sir.
7          THE COURT:  It's rare that a federal prosecutor
8  seeks an indictment from a grand jury and the grand jury says
9  no, but it happens from time to time and for all I know you
10 might be one of those lucky few whom the grand jury would
11 refuse to return an indictment with respect to.
12          Even then they can go in front of another grand
13 jury, as long as they get permission from Washington, but the
14 fact remains a grand jury might never indict you.  Do you
15 understand that, sir?
16          THE DEFENDANT: Yes, your Honor.
17          THE COURT:  Do you still want to waive your right to
18 require the government to get an indictment?
19          THE DEFENDANT: Yes, your Honor.
20          THE COURT:  Is there a plea agreement?
21          MR. HARAN:  No.  There is no agreement, but I've
22 given you what the government's estimate of the guidelines
23 are.
24          THE COURT:  There is no promises, nobody's made any
25 promises to you to get you to waive this right?

Burton H. Sulzer - OCR, CM, CRR

6

1     THE DEFENDANT: No, your Honor.
2     THE COURT: And nobody is pressuring you to do it.
3  I take it, it's a voluntary decision on your part after
4  consulting with your lawyer about your options?
5     THE DEFENDANT: Yes, your Honor.
6     THE COURT: Any reason I shouldn't accept your
7  client's waiver of his right to grand jury indictment?
8     MR. SANTAMAURO: No, your Honor.
9     THE COURT: I take it you have been over with him
10 the rights he'd be waiving and the consequences he faces if he
11 pleads guilty and you're confident he understands all of that?
12    MR. SANTAMAURO: I am, your Honor.
13    THE COURT: I find that Mr. McCormack is acting
14 knowingly and voluntarily, he understands what is at stake and
15 there is no reason not to accept his waiver of his right to
16 grand jury indictment.
17    Do you have a written waiver form?
18    MR. SANTAMAURO: I'm in possession of it at this
19 time, Judge. I've gone over it with Mr. McCormack prior to
20 having him sign it as well.
21    THE COURT: Great. Thank you, counsel. I'll sign
22 it right now. I'm signing it as I speak.
23    All this means, Mr. McCormack, is I'm accepting for
24 filing this information, just like it is an indictment. You
25 have a right, the same right you would have were you indicted,

7

1  to plead not guilty to the charge in it.  Do you understand
2  that, sir?
3           THE DEFENDANT: Yes, your Honor.
4           THE COURT:  If you chose to plead not guilty today,
5  I'd set up a discovery schedule and then I would schedule a
6  speedy public trial of the charge in the indictment.
7  Understood?
8           THE DEFENDANT: Yes, your Honor.
9           THE COURT:  It would be to a jury.  The jury would
10 decide the facts of the case; that is, it would decide if the
11 government proved your guilt beyond a reasonable doubt.
12          That's what a trial would be all about.  You
13 wouldn't have any burden, you wouldn't have to prove your
14 innocence, you wouldn't have to do anything.  The burden would
15 be solely on the shoulders of the government.
16          Understood?
17          THE DEFENDANT:  Yes, your Honor.
18          THE COURT:  You would be presumed innocent
19 throughout the trial, throughout the jury's deliberations and
20 you could be found guilty only if the jury was persuaded
21 unanimously that the government proved you guilty beyond a
22 reasonable doubt.
23          Understood?
24          THE DEFENDANT: Yes, your Honor.
25          THE COURT:  You'd be represented by your lawyer if

1  you went to trial.  The two of you would see and hear the
2  witnesses against you because they would testify right here in
3  open court from that witness stand in your presence.  You'd be
4  over there at the defense table.
5       Your lawyer could object to the government's
6  evidence, he could cross-examination the government's
7  witnesses, he could present evidence in defense of the charge.
8  He'd have access to the subpoena power of the court to compel
9  people to come to court to testify in your defense.
10      Understand all that?
11      THE DEFENDANT: Yes, your Honor.
12      THE COURT:  You could testify in your own defense;
13  if you went to trial, you'd have that right.  On the other
14  side of the coin, you'd have an absolute right not to testify.
15  Every defendant has that right, and I would make sure from the
16  moment we began picking a jury that the jury in your case
17  wouldn't hold that against you in any way, shape or form; that
18  is, if you went to trial and you chose to remain silent and
19  not testify, I would make sure that the jury drew in inference
20  against you at all.  They would recognize that's your basic
21  fundamental right.
22      Understood?
23      THE DEFENDANT: Yes, your Honor.
24      THE COURT:  If you plead guilty, you'd be giving up
25  your right to a trial.  By giving up your right to a trial

1  you'd be giving up your rights that you would have at trial
2  that I have been going over with you, I'll find you guilty of
3  the charge in this information based solely on your admission
4  of guilt here today, not on anything else, and you won't have
5  a right to appeal to a higher court from my finding that you
6  are guilty.
7         Understood?
8         THE DEFENDANT: Yes, your Honor.
9         THE COURT:  Also pleading guilty entails you saying
10 why you're guilty, which I'll get to in a few minutes.  I
11 bring it up now so that you can understand clearly that even
12 the process of offering a plea of guilty includes you giving
13 up your right to remain silent and in a few minutes, when we
14 get to that part of the proceeding, basically you'll be a
15 witness against yourself, the only witness against yourself
16 right here in open court under oath on the record.
17        Understood?
18        THE DEFENDANT: Yes, your Honor.
19        THE COURT:  Do you want to give up your right to a
20 trial and the rights that you have at trial by pleading
21 guilty?
22        THE DEFENDANT:  Yes, your Honor.
23        THE COURT:  If you plead guilty, you face a
24 statutory maximum term authorized by the law that you're going
25 to plead guilty to violating and then there are other

10

1  sentencing related issues, facts that I'll bring to your
2  attention about the guidelines.
3       The statutory maximum over which you cannot possibly
4  be sentenced and up to which you could conceivably be
5  sentenced -- but it's very unlikely you'll receive a sentence
6  close to 20 years -- but the maximum term is 20 years.
7       Understood?
8       THE DEFENDANT: Yes, your Honor.
9       THE COURT:  The supervised release term that you
10 face could be as long as three years.  Understood?
11      THE DEFENDANT: Yes, your Honor.
12      THE COURT:  Supervised release means if you get a
13 jail term, when it's over, you're under supervision, you're
14 not completely at liberty.  They let you out of jail, but you
15 remain under supervision.  That's why they call it supervised
16 release.
17      You have to report to a probation officer, you have
18 to refrain from committing any other crimes, be they big ones
19 or little ones, state or federal.  You can't use drugs.
20      There is a long list of conditions on your liberty
21 when you're on supervised release, and if you violate any of
22 those conditions you could conceivably get brought back before
23 me by the government or by your supervising officer, and if a
24 violation is proved you could go back to jail for up to two
25 years without credit for the time you have been on release.

Burton H. Sulzer - OCR, CM, CRR

1          You understand all that?

2          THE DEFENDANT: Yes, your Honor.

3          THE COURT: You face a fine of up to a million

4   dollars. Do you understand?

5          THE DEFENDANT: Yes.

6          THE COURT: There's another form of financial

7   punishment called restitution by which you could, if the

8   circumstances warrant it, be ordered to make whole, pay back

9   any victim or victims of your crime. Understood?

10         THE DEFENDANT: Yes, your Honor.

11         THE COURT: There's a $100 special assessment that

12  goes to a victims and witnesses fund that you'll be ordered to

13  pay no matter what at sentencing. Understood?

14         THE DEFENDANT: Yes, your Honor.

15         THE COURT: And there's some collateral consequences

16  you could face not as part of my sentence but administrative

17  regulatory sanctions by the SEC or other bodies that could

18  take the form of restricting your employment. They could make

19  you disgorge ill-gotten gains, impose penalties and the like.

20         Understood?

21         THE DEFENDANT: Yes.

22         THE COURT: One of the things I will consider when

23  it comes time to sentence you is your advisory guideline

24  range. Do you know what I mean by that?

25         THE DEFENDANT: Yes, your Honor.

1           THE COURT:  It's one of the several factors to be
2   considered at sentencing.  The government estimates the one in
3   your case will be 41 to 51 months.  I have no reason to doubt
4   that.  Then again, I don't know anything about your case.
5           More importantly, that estimate is not binding on
6   you and even more important than that it's not binding on me.
7   I'm the one to determine what your advisory range is.  I won't
8   do it until after a presentence investigation happens and that
9   produces a presentence report which gets distributed to
10  everybody in the case, you and the prosecutor, and your lawyer
11  and me, and there's a right to comment on it.
12          The report will include the probation officer's best
13  assessment as to what your guideline range should be and how
14  he or she calculated it.  I will listen to any arguments and
15  then I will decide.
16          Understood?
17          THE DEFENDANT: Yes.
18          THE COURT:  It takes a few months.  If at the end of
19  that process you feel bad because of the advisory range that I
20  come up with, you to change your mind about having pled
21  guilty, that's not going to be a basis on which you can take
22  back your plea of guilty.  Understood?
23          THE DEFENDANT:  Yes, your Honor.
24          THE COURT:  There are only limited circumstances in
25  which you can ever take back a plea of guilty, even if you

1  changes your mind as early as tomorrow morning.
2          You can always through your lawyer request a
3  withdrawal of the plea of guilty, but unless there's some just
4  reason that in my view warrants withdrawing a plea of guilty
5  entered here in open court after these admonitions I'm giving
6  you solemnly under oath, unless there is some just reason to
7  jettison all that, I'm not going to let you withdraw your
8  plea.
9          Do you understand that?
10         THE DEFENDANT: Yes, your Honor.
11         THE COURT:  I want to make sure you understand the
12 nature of the charge.  If the government were required to
13 prove you guilty of this charge, it would have to prove --
14 that is if you didn't plead guilty, there would be a trial --
15 it would have to prove beyond a reasonable doubt a conspiracy
16 to commit securities fraud or wire fraud.
17         Conspiracy is just an agreement to commit either or
18 both of those two crimes.
19         I take it 88 you've read this information?
20         THE DEFENDANT: Yes, your Honor.
21         THE COURT:  They would have to prove an agreement to
22 commit either or both of those crimes as charged here in the
23 indictment and your membership in that conspiracy.  They have
24 to prove that you became a member of it, or were a member of
25 it at its outset, knowing its unlawful goals and intending by

1  your actions to help it succeed.  They would have to prove
2  those things beyond a reasonable doubt.
3          Do you understand?
4          THE DEFENDANT: Yes, your Honor.
5          THE COURT:  Do you have any questions before you
6  plead guilty?
7          THE DEFENDANT: No, your Honor.
8          THE COURT:  Counsel, do you know of any reason your
9  client should not plead guilty?
10         MR. SANTAMAURO:  I do not.
11         THE COURT:  Mr. McCormack, how do you plead to this
12 charge, guilty or not guilty?
13         THE DEFENDANT: Guilty.
14         THE COURT:  Are you making this plea voluntarily and
15 of your own free will?
16         THE DEFENDANT: Your Honor.
17         THE COURT:  Is anybody pressuring you to plead
18 guilty?
19         THE DEFENDANT: No, your Honor.
20         THE COURT:  Has anybody made any promises to you to
21 get you to plead guilty?
22         THE DEFENDANT: No, your Honor.
23         THE COURT:  Anybody promise you what sentence you're
24 going to get?
25         THE DEFENDANT: No, your Honor.

```
 1            THE COURT:  Tell me, please, why you're guilty.
 2   What did you do?
 3            THE DEFENDANT: I committed securities fraud and mail
 4   fraud.
 5            THE COURT:  Briefly, in your own words, how did you
 6   do it, how did you participate in doing it?
 7            THE DEFENDANT: My wife owned a business and I worked
 8   for a brokerage firm so I used to give her business from my
 9   company, which wasn't allowed.
10            THE COURT:  I take it you did this without the
11   knowledge of your employer?
12            THE DEFENDANT: Yes.
13            THE COURT:  Could you just flesh out a little bit in
14   broader strokes, Mr. Haran, what the government would be
15   prepared to prove at trial.
16            MR. HARAN:  That Mr. McCormack entered into
17   agreements with people at other firms that A.G. Edwards did
18   business with; that Mr. McCormack would arrange to send those
19   firms business from A.G. Edwards in exchange for them paying
20   finder's fees to this finder firm, D. Mack, which was in the
21   name of Mr. McCormack's wife in instances where there was no
22   need for a finder and in instances in which no finder's
23   services had been performed.
24            The finder firm was based either in Staten Island or
25   Brooklyn, or both, during various times, and he did this
```

1  without the knowledge of his employer A.G. Edwards.
2          THE COURT:  I take it your proof at trial would
3  establish that this defrauded A.G. Edwards beyond the services
4  of this employee and of the money in the form of the payments
5  that were made to the wife's company?
6          MR. HARAN:  Yes, your Honor.
7          THE COURT:  Any disagreement about all that?
8          THE DEFENDANT: No, your Honor.
9          THE COURT:  I find that Mr. McCormack is acting
10 knowingly and voluntarily, he understands the rights he's
11 waiving by pleading and the consequences he faces if he
12 pleads.  I find there's a factual basis for his plea of
13 guilty, so I accept it.
14         Let's fix an date for sentence before we address the
15 bail issue.
16         THE CLERK:  December 7th at 2 o'clock p.m.
17         THE COURT:  It looks like the parties have agreed
18 that there ought to be release on the following conditions:
19 An unsecured bond in the amount of $200,000; a travel
20 restriction to New Jersey, New York and Connecticut; surrender
21 of any passports, and an order not to apply for any new
22 passport; random visits by a pretrial services officer;
23 reporting by telephone and in-person, as directed by the
24 pretrial services officer, and random drug testing and
25 evaluation for substance abuse, and a specific condition of

```
 1  refraining from excessive alcohol consumption.
 2             That about sum it up?
 3             MR. HARAN:  Yes, your Honor.
 4             MR. SANTAMAURO:  Yes, your Honor.
 5             THE DEFENDANT: Yes, your Honor.
 6             THE COURT:  You have been over these with your
 7  client?
 8             MR. SANTAMAURO:  Yes.
 9             THE COURT:  This was agreed to?
10             MR. HARAN:  It will be cosigned by the defendant's
11  brother, who is in court.
12             THE COURT:  That is James McCormack, Junior?
13             MR. SANTAMAURO:  Yes, your Honor.  He's present in
14  court.
15             THE COURT:  All right.  Come up.  We have the able
16  input of Pretrial Services.  Thank you for the report.
17             You're James McCormack?
18             A VOICE:  Yes.
19             THE COURT:  You were listening?
20             A VOICE:  Yes.
21             THE COURT:  You put yourself on the hook in a way
22  for your brother, you understand that?
23             A VOICE:  Yes.
24             THE COURT:  All right.
25             Counsel, why don't you show your client and his
```

18

1  brother where to sign, please.
2          (Pause.)
3          THE COURT:  Has your client already been processed?
4          MR. SANTAMAURO:  Yes.
5          THE COURT:  In the building?
6          MR. HARAN:  Yes, your Honor.
7          THE COURT:  All right.  Here's the bond.  Anything
8  further?
9          MR. HARAN:  No, your Honor.
10         THE COURT:  All right.
11         MR. SANTAMAURO:  Nothing further.  Thank you.
12         THE COURT:  Have a good day.
13                  * * * * * * * *